# UNITED STATES *v.* JOHNSON

No. 98–1696. Argued December 8, 1999—Decided March 1, 2000

KENNEDY, J., delivered the opinion for a unanimous Court.

*Barbara McDowell* argued the cause for the United States. With her on the briefs were *Solicitor General Waxman, Assistant Attorney General Robinson, Deputy Solicitor General Dreeben,* and *Richard A. Friedman.*

*Kevin M. Schad* argued the cause and filed a brief for respondent.*

JUSTICE KENNEDY delivered the opinion of the Court.

An offender had been serving time in federal prison for multiple felonies when two of his convictions were declared invalid. As a result, he had served too much prison time and was at once set free, but a term of supervised release was yet to be served on the remaining convictions. The question becomes whether the excess prison time should be credited to the supervised release term, reducing its length. Bound by the text of the controlling statute, 18 U. S. C. §3624(e), we hold that the supervised release term remains unaltered.

Respondent Roy Lee Johnson was convicted in 1990 on two counts of possession with an intent to distribute controlled substances, 84 Stat. 1260, 21 U. S. C. §841(a), on two counts of use of a firearm in connection with a drug trafficking crime, 18 U. S. C. §924(c) (1994 ed. and Supp. IV),

---

*Edward M. Chikofsky, Barbara E. Bergman,* and *Henry J. Bemporad* filed a brief for the National Association of Criminal Defense Lawyers et al. as *amici curiae* urging affirmance.

and on one count of possession of a firearm by a convicted felon, § 922(g). He received a sentence of 171 months' imprisonment, consisting of three concurrent 51-month terms on the § 841(a) and § 922(g) counts, to be followed by two consecutive 60-month terms on the § 924(c) counts. In addition, the District Court imposed a mandatory 3-year term of supervised release for the drug possession offenses. See 21 U. S. C. § 841(b)(1)(C) (1994 ed., Supp. III). The Court of Appeals, though otherwise affirming respondent's convictions and sentence, concluded the District Court erred in sentencing him to consecutive terms of imprisonment for the two § 924(c) firearm offenses. *United States* v. *Johnson,* 25 F. 3d 1335, 1337–1338 (CA6 1994) (en banc). On remand the District Court modified the prisoner's sentence to a term of 111 months.

After our decision in *Bailey* v. *United States,* 516 U. S. 137 (1995), respondent filed a motion under 28 U. S. C. § 2255 to vacate his § 924(c) convictions, and the Government did not oppose. On May 2, 1996, the District Court vacated those convictions, modifying respondent's sentence to 51 months. He had already served more than that amount of time, so the District Court ordered his immediate release. His term of supervised release then went into effect. This dispute concerns its length.

In June 1996, respondent filed a motion requesting the District Court to reduce his supervised release term by 2.5 years, the extra time served on the vacated § 924(c) convictions. The District Court denied relief, explaining that pursuant to 18 U. S. C. § 3624(e) the supervised release commenced upon respondent's actual release from incarceration, not before. Granting respondent credit, the court observed, would undermine Congress' aim of using supervised release to assist convicted felons in their transitions to community life.

A divided Court of Appeals reversed. 154 F. 3d 569 (CA6 1998). The court accepted respondent's argument that his

term of supervised release commenced not on the day he left prison confines but earlier, when his lawful term of imprisonment expired. *Id.*, at 571. Awarding respondent credit for the extra time served, the court further concluded, would provide meaningful relief because supervised release, while serving rehabilitative purposes, is also "punitive in nature." *Ibid.* Judge Gilman dissented, agreeing with the position of the District Court. *Id.*, at 572–573.

The Courts of Appeals have reached differing conclusions on the question presented. Compare *United States* v. *Blake*, 88 F. 3d 824, 825 (CA9 1996) (supervised release commences on the date defendants "should have been released, rather than on the dates of their actual release"), with *United States* v. *Jeanes*, 150 F. 3d 483, 485 (CA5 1998) (supervised release cannot run during any period of imprisonment); *United States* v. *Joseph*, 109 F. 3d 34 (CA1 1997) (same); *United States* v. *Douglas*, 88 F. 3d 533, 534 (CA8 1996) (same). We granted certiorari to resolve the question, 527 U. S. 1062 (1999), and we now reverse.

Section 3583(a) of Title 18 authorizes, and in some instances mandates, sentencing courts to order supervised release terms following imprisonment. On the issue presented for review—whether a term of supervised release begins on the date of actual release from incarceration or on an earlier date due to a mistaken interpretation of federal law—the language of § 3624(e) controls. The statute provides in relevant part:

> "A prisoner whose sentence includes a term of supervised release after imprisonment shall be released by the Bureau of Prisons to the supervision of a probation officer who shall, during the term imposed, supervise the person released to the degree warranted by the conditions specified by the sentencing court. The term of supervised release commences on the day the person is released from imprisonment and runs concurrently with any Federal, State, or local term of probation or super-

vised release or parole for another offense to which the person is subject or becomes subject during the term of supervised release. A term of supervised release does not run during any period in which the person is imprisoned in connection with a conviction for a Federal, State, or local crime unless the imprisonment is for a period of less than 30 consecutive days."

The quoted language directs that a supervised release term does not commence until an individual "is released from imprisonment." There can be little question about the meaning of the word "release" in the context of imprisonment. It means "[t]o loosen or destroy the force of; to remove the obligation or effect of; hence to alleviate or remove; . . . [t]o let loose again; to set free from restraint, confinement, or servitude; to set at liberty; to let go." Webster's New International Dictionary 2103 (2d ed. 1949). As these definitions illustrate, the ordinary, commonsense meaning of release is to be freed from confinement. To say respondent was released while still imprisoned diminishes the concept the word intends to convey.

The first sentence of § 3624(e) supports our construction. A term of supervised release comes "after imprisonment," once the prisoner is "released by the Bureau of Prisons to the supervision of a probation officer." Supervised release does not run while an individual remains in the custody of the Bureau of Prisons. The phrase "on the day the person is released," in the second sentence of § 3624(e), suggests a strict temporal interpretation, not some fictitious or constructive earlier time. The statute does not say "on the day the person is released or on the earlier day when he should have been released." Indeed, the third sentence admonishes that "supervised release does not run during any period in which the person is imprisoned."

The statute does provide for concurrent running of supervised release in specific cases. After the operative phrase "released from imprisonment," § 3624(e) requires the con-

current running of a term of supervised release with terms of probation, parole, or with other, separate terms of supervised release. The statute instructs that concurrency is permitted not for prison sentences but only for those other types of sentences given specific mention. The next sentence in the statute does address a prison term and does allow concurrent counting, but only for prison terms less than 30 days in length. When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference, and the one we adopt here, is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth. The 30-day exception finds no application in this case; each of respondent's sentences, to which the term of supervised release attached, exceeded that amount of time. Finally, § 3583(e)(3) does not have a substantial bearing on the interpretive issue, for this directive addresses instances where conditions of supervised release have been violated, and the court orders a revocation.

Our conclusion finds further support in 18 U. S. C. § 3583(a), which authorizes the imposition of "a term of supervised release after imprisonment." This provision, too, is inconsistent with respondent's contention that confinement and supervised release can run at the same time. The statute's direction is clear and precise. Release takes place on the day the prisoner in fact is freed from confinement.

The Court of Appeals reasoned that reduction of respondent's supervised release term was a necessary implementation of § 3624(a), which provides that "[a] prisoner shall be released by the Bureau of Prisons on the date of the expiration of the prisoner's term of imprisonment . . . ." All concede respondent's term of imprisonment should have ended earlier than it did. It does not follow, however, that the term of supervised release commenced, as a matter of law, once he completed serving his lawful sentences. It is true the prison term and the release term are related, for the latter cannot begin until the former expires. Though inter-

related, the terms are not interchangeable. The Court of Appeals was mistaken in holding otherwise, and the text of § 3624(e) cannot accommodate the rule the Court of Appeals derived. Supervised release has no statutory function until confinement ends. Cf. *United States* v. *Granderson*, 511 U. S. 39, 50 (1994) (observing that "terms of supervised release . . . follow up prison terms"). The rule of lenity does not alter the analysis. Absent ambiguity, the rule of lenity is not applicable to guide statutory interpretation. Cf. *Gozlon-Peretz* v. *United States*, 498 U. S. 395, 410 (1991).

While the text of § 3624(e) resolves the case, we observe that our conclusion accords with the statute's purpose and design. The objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release. Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct from those served by incarceration. See § 3553(a)(2)(D); United States Sentencing Commission, Guidelines Manual §§ 5D1.3(c), (d), (e) (Nov. 1998); see also S. Rep. No. 98–225, p. 124 (1983) (declaring that "the primary goal [of supervised release] is to ease the defendant's transition into the community after the service of a long prison term for a particularly serious offense, or to provide rehabilitation to a defendant who has spent a fairly short period in prison for punishment or other purposes but still needs supervision and training programs after release"). Sentencing courts, in determining the conditions of a defendant's supervised release, are required to consider, among other factors, "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need . . . to afford adequate deterrence to criminal conduct; . . . to protect the public from further crimes of the defendant; and . . . to provide the defendant with needed educational or vocational training, medical care, or other cor-

rectional treatment." 18 U. S. C. § 3553(a). In the instant case, the transition assistance ordered by the trial court required respondent, among other conditions, to avoid possessing or transporting firearms and to participate in a drug dependency treatment program. These conditions illustrate that supervised release, unlike incarceration, provides individuals with postconfinement assistance. Cf. *Gozlon-Peretz, supra,* at 407 (describing "[s]upervised release [a]s a unique method of postconfinement supervision invented by the Congress for a series of sentencing reforms"). The Court of Appeals erred in treating respondent's time in prison as interchangeable with his term of supervised release.

There can be no doubt that equitable considerations of great weight exist when an individual is incarcerated beyond the proper expiration of his prison term. The statutory structure provides a means to address these concerns in large part. The trial court, as it sees fit, may modify an individual's conditions of supervised release. § 3583(e)(2). Furthermore, the court may terminate an individual's supervised release obligations "at any time after the expiration of one year . . . if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." § 3583(e)(1). Respondent may invoke § 3583(e)(2) in pursuit of relief; and, having completed one year of supervised release, he may also seek relief under § 3583(e)(1).

The statute, by its own necessary operation, does not reduce the length of a supervised release term by reason of excess time served in prison. The judgment of the Court of Appeals for the Sixth Circuit is reversed, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*